CASE 91—ACTION TO ENFORCE A TAX LIEN—JUNE 8.

# City of Middlesboro v. Coal & Iron Bank, &c.

APPEAL FROM BELL CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. REVERSED.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF TAX ORDINANCE—TAXA-
TION OF BANK FRANCHISE—LIEN FOR TAXES.

Held: 1. A city ordinance levying a tax for the fiscal year begin-
ning May 1, 1893, on all taxable property in the city as of its
value November 1, 1892, as assessed by the city assessor, and
equalized by the board of equalization, embraces all property in
the city liable for *ad valorem* taxation for the fiscal year named,
and not merely all property assessed by the assessor, and
equalized by the board of equalization.

2. The franchise of a bank was embraced by that ordinance, though
the law authorizing the taxation of the franchises of banks
did not become effective, and was not even passed, until Novem-
ber 11, 1892, and though no valuation thereof had been made
at the date of the ordinance.

3. Both under the general revenue law and under the charter of
cities of the fourth class a lien exists on any and all property
for any and all taxes due by its owner.

4. Only persons who have notice of a proceeding by the Common-
wealth under Kentucky Statutes, section 616, to have a receiver
appointed for an insolvent bank, are bound by the judgment and
decree of sale therein, and therefore a city not made a party to
the action may assert its tax lien against the property of the
insolvent corporation in the hands of the purchaser at the de-
cretal sale.

T. G. ANDERSON, ATTORNEY FOR APPELLANT.

E. J. HOWARD OF COUNSEL.

1. Appellant had a lien for a franchise tax for the year 1893, upon
other property of the Coal & Iron Bank and it had that lien
under its city charter.

2. Appellants lien exists notwithstanding the amendment to the
General Revenue Law of March 15, 1894. Acts Kentucky Leg-
islature, 1889 and 1890, page 648, vol. 1, chap. 347, sec. 10;
Anderson v. City of Mayfield, 93 Ky., 230; Appellant's charter,

sec. 64, also sec. 84; Kentucky Statutes, secs. 3549, 4021, 4092, 4084, 4022, 4077 and 4078; Lou. Tob. Warehouse Co. v. Com., decided March 14, 1899; Henderson Bridge Co. v. Kentucky, 166 U. S., 154; Adams Express Co. v. Kentucky, 166 U. S., 180; Con. of Ky., secs. 174, 172 and 171; Art. 16 original Rev. Act, page 363, Acts of 91, 92 and 93; Owensboro v. Shelbyville Bank, 19 Ky. Law Rep., 248; Farmers & Traders' Bank v. City of Owensboro and Deposit Bank v. City of Carlisle, 19 Ky. Law Rep., 248; General Statutes, art. 1, sec. 2, chap. 92; Staunton Rev. art. 1, sec. 14, chap. 83; Rev. Stat., page 239; Cooley on Taxation, (2d Ed.), 444; Hewitt Law, chap. 92, art. 1, sec. 2; General Statutes, (Ed. 88), also page 1035; Rev. Law, 192, page 278; Acts 91, 92 and 93, art. 1, sec. 3; Kentucky Statutes, sec. 3490, sub-div. 2, also secs. 3536 and 3544; Kentucky Constitution, sec. 174; Kentucky Statutes, secs. 4020, 4022, 3536; Am. & Eng. Ency., vol. 25, pages 272, 276; Acts 1890, vol. 1, page 669, chap. 347, sec. 64; Marion Co. v. Wilson, 20 Ky. Law Rep., 1193; City of Newport v. Masonic Assn. K. Law Rep., vol. 20 page 266.

M. H. RHORER AND J. W. ALCORN, ATTORNEYS FOR APPELLEE, BELL COUNTY INVESTMENT CO.

1. The city council of Middlesboro did not levy a tax for the year 1893 on the franchise of the Coal & Iron Bank. Revenue Act of November 11, 1892, art. 3, sec. 16.

2. No lien attaches upon the tangible property of a corporation to secure payment of a tax levied on the franchise of that corporation. Act of March 15, 1894, sec. 3, Acts 1894; Revenue Act of November 11, 1892; Kentucky Statutes, section 2536.

3. The purchaser of property sold under judicial proceedings in an action instituted under section 616, Kentucky Statutes, takes the property free from any lien for taxes owing by the insolvent corporation, either directly to the Commonwealth or to any municipal sub-division thereof.

4. The petition does not show plaintiff's right to enforce a lien, if in fact it ever had any.

5. The action by the Secretary of State is a bar to this action.

T. L. EDELEN, ATTORNEY FOR THE APPELLEE, BELL COUNTY INVESTMENT COMPANY.

1. The lien given the Commonwealth or a municipality for taxes, dates from the time there is a conjunction of assessment and levy.

2. The city of Middlesboro being in privity with the State is bound by the judgment recovered by the State, and thereby waived

its lien, if any, upon this property for taxes. Franklin County
Court v. L. & N. R. R. Co., 84 Ky., 59; Com. for use, &c., v.
L. & N. R. R. Co., 89 Ky., 134; Mason, &c., v. Knoxville, &c.,
R. R., 16 Ky. Law Rep., 9.

SAMPSON & CHAPMAN, ATTORNEYS FOR APPELLEE, MIDDL'SBORO
TOWN & LAND COMPANY.

1. There exists in favor of the city no lien on the property of the
bank for this tax.
2. If any lien ever existed by laches the city has waived it.
3. There was no levy of tax on the franchise; the levy as made
was unauthorized.
4. The plaintiff could not maintain this suit with the Common-
wealth suit for liquidation pending and in the hands of receiver.
5. The city is cut off by the judgment and sale in the Commonwealth
suit. Parrington v. Pickens, 82 Ky., 449; Leach v. Kendall,
13 Bush, 424; Ky. Central R. R. Co. v. Com., 92 Ky., 64; Acts
1889 and 1890, vol. 1, sec. 10, page 651.

OPINION OF THE COURT BY JUDGE WHITE—REVERSING.

The appellant, city of Middlesboro, is a city of the fourth
class. On February 22, 1893, appellant's board of council
passed an ordinance levying a tax for the fiscal year end-
ing April 30, 1894, upon all the taxable property in the
city as of its value November 1, 1892, as assessed by the
assessor and equalized by the board of equalization, spec-
ifying the purposes, etc., for which it would be used. On
August 16, 1893, the auditor certified to the clerk of Bell
County Court that the Coal & Iron Bank had been as-
sessed on its franchise for taxes under the act of Novem-
ber 11, 1892, the valuation being fixed at $202,100. This
valuation and assessment were certified by the county
clerk to the collector of taxes of appellant. The amount
of taxes that would be due on this valuation under the
ordinance of March 22, 1893, would be $2,829.40. This tax
is the subject of this controversy. On December 1, 1893,
the Secretary of State, under section 616 of Kentucky
Statutes, caused proceedings to be instituted against the

Coal & Iron Bank, and a receiver appointed to close up and settle its affairs in insolvency. It appeared in that action by the Commonwealth that the bank was hopelessly insolvent, and at the July term, 1894, of the circuit court a judgment was rendered directing a sale of the assets and all the property of the bank. At this sale G. W. Saulsberry became the purchaser at $1,644, and afterwards transferred his bid to appellees, Bell County Investment Company, and Middlesboro Town & Land Company. The report of sale was confirmed, and the proceeds of sale were all consumed in paying the expense of that settlement suit. In December, 1897, the petition of appellant was filed against the defunct bank and the appellees, Bell County Investment Company and Middlesboro Town & Land Company, seeking to have adjudged to appellant a lien on the property bought at the receiver's sale to the amount of the tax of $2.829.40, and penalty alleged to be due appellant by the Coal & Iron Bank for taxes on its franchise, as certified by the auditor in August, 1893, for that year. The facts above were pleaded in the petition and the several amendments, and the court sustained a demurrer to the petition as amended, and dismissed the action, and appellant prosecutes this appeal.

The position of appellees is that the ordinance of February, 1893, did not levy a tax on the franchise of the Coal & Iron Bank, nor, indeed, on any property, except as assessed by the city assessor as of November 1, 1892, and that came under the supervision of the board of equalizers for the city. Secondly. It is contended that, even if the ordinance of February, 1893, embraced the franchise tax on the bank, there is no lien on the real estate and choses in action bought by appellees for the amount

of such taxes. Thirdly. It is insisted that by delay or laches of appellant in the collection of the tax it has lost any right to collect same from the purchaser of the assets of the defunct bank. Lastly, it is contended that, the proceedings in insolvency being in the name of the Commonwealth, the judgment rendered therein and the sale thereunder operate as a bar of all claim of the State for taxes, or the claim of any subdivision of the State. In other words, the proceeding being by the State, all persons, corporations, or municipalities that derive a right or power from the sovereignty will be estopped to dispute the absolute title of the purchaser at the sale. The questions here presented are not entirely free from difficulty. The ordinance of February, 1893, levying the tax for the fiscal year beginning May 1, 1893, specifies that the tax is levied "on all taxable property in the city of Middlesboro, Bell county, Kentucky, as of its value November 1, 1892, as assessed by T. E. Cook, assessor for said city, and equalized by the board of equalization for the purposes hereinafter set out," etc. A literal construction of that ordinance might mean that the tax was only levied on the property in the city (1) that had been assessed by T. E. Cook, (2) that had been equalized,—*i. e*, raised or lowered by the board of equalization. Such a construction would, it seems to us, be strained. Under this literal construction of the ordinance, if Cook, the assessor, had overlooked property, it could not be taxed; or if it was assessed by Cook and the board of equalization did not equalize its value, it could not be forced to pay its just proportion of the taxes due the city. This can not be the intent or meaning of the ordinance. Under its provisions, by a strict construction, the property of a railroad in the city would escape taxation; for the railroad

property, like franchises, is not assessable by the city assessor, nor can the city board of equalizers pass on its valuation. Yet, if appellees' contention as to the meaning of the ordinance be correct, the railroads in the city would not be liable. We are of opinion that a fair construction of the ordinance means that all property in the city liable for taxation *ad valorem* for the fiscal year ending April 30, 1894, should pay taxes at the rate there fixed.

It is insisted that, even giving the ordinance this broad meaning, appellant had no right to tax the franchise of the bank for that year, for the reason that all property assessed was valued as of November 1, 1892, and on that date there was no law authorizing the taxation of franchises of banks, the first law on the subject having passed November 11, 1892. The law providing for the taxation of franchises was effective November 11, 1892, by reason of an emergency clause in its enactment, and we are of opinion that the tax on franchises was due for the year 1893, and especially is this true as to appellant, whose fiscal year extended to April 30, 1894.

It is insisted that, as the valuation of the franchise was not made at the date of the ordinance, the tax could not be levied without a valuation. We think this immaterial. The same objection would lie to all property omitted and to the railroad, also not then assessed. We are clearly of opinion that the Coal & Iron Bank owed the franchise tax to appellant for the year ending April 30, 1894. As it was, then, property, and taxable, it could not have been exempted if the council had expressly so provided. Section 171 of the Constitution provides: "They [taxes] shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the same; and all taxes shall be levied and collected by gen-

eral laws." By section 64 of the act chartering the city of Middlesboro, it is provided: "All taxes levied under this charter shall be due and payable on the 1st day of May each year, and the city of Middlesboro shall have a lien for taxes upon any and all property subject to taxation, which lien shall be superior to all encumbrances prior or subsequent." This provision of the charter is re-enacted in the charter for fourth-class cities, the date when due and payable being changed to July 1st. By section 4021, Kentucky Statutes, it is provided: "The Commonwealth and each county, incorporated city, town and taxing district, shall have a lien on the property assessed for the taxes due them respectively, which shall not be defeated by gift, devise, sale, alienation, or any means whatever, unless the gift, devise, sale or alienation shall have been made for more than five years before the institution of proceedings to enforce the lien, and nothing shall be exempt from levy and sale for taxes and costs incident to the sale." By section 4151, Kentucky Statutes, it is provided, in effect, that the sheriff or tax collector shall levy for taxes first on personalty, and, if there be none, he may levy on real estate for the taxes due. By these provisions of the special charter of appellant, the general charter of cities of the fourth class, and of the general law under the title, revenue, and taxation, we are of opinion that there exists a lien on any and all property for any and all taxes due by its owner, and that the assets of the bank are liable to be subjected to the payment of the franchise tax due appellant, unless by reason of laches, delay, or estoppel that right has been lost or waived. If there be such reason, it will properly appear in an answer. There is nothing in the petition to which a demurrer was sustained, showing such laches or waiver. We are also of opinion that there

is nothing in section 616, Kentucky Statutes, under which the bank was placed in the hands of a receiver, that can be construed as precluding any person, municipality, or taxing district from asserting any claim against any corporation that may be forced into liquidation by the Secretary of State. The proceeding there provided is for the benefit of the public, it is true, but, in our opinion, after the action is begun, and the receiver is appointed, the same rules apply as to any other action of the same nature brought by a creditor or a director of the corporation. Only those who have notice of the proceedings are bound by the judgment and decree of sale. The holders of liens should be brought into court, and their rights adjudicated; but this duty does not, of necessity, devolve on the Commonwealth, and surely, if the Commonwealth fails to bring in all the municipal corporations, and have their rights adjudicated, it can not be said that the municipal corporations lose their liens, if such they had, against the property of the insolvent corporation. In other actions of insolvency the purchaser at decretal sales must protect himself against tax liens. We see no reason why a different rule should obtain in proceedings under section 616. For the reason that, in our opinion, the petition states a cause of action, we conclude that judgment sustaining a demurrer thereto and dismissing the action is erroneous. Judgment reversed, and cause remanded for proceedings consistent herewith.